VIRGINIA:    IN THE CIRCUIT COURT OF ROCKINGHAM COUNTY

PATRICK MULLINS,
d/b/a Mullins Enterprises,
d/b/a MyWoodPhoto,

       Plaintiff,

v.                                                    Case No. _CL19-1921_

VISITURE, LLC,

      **Serve:** Brian Cohen, Registered Agent
             Visiture, LLC
             1001 Jamsie Cove Dr.
             Charleston, SC 29412

       Defendant.

## COMPLAINT

Plaintiff Patrick Mullins, d/b/a Mullins Enterprises, d/b/a MyWoodPhoto, ("Mullins"), by counsel, moves for judgment against Defendant Visiture, LLC ("Visiture") on the following grounds:

1.    Mullins prints and sells personalized images on wood products through Etsy.com. Mullins' products are identified under the trade name "MyWoodPhoto."

2.    Mullins is based in Rockingham County, Virginia, and has a production facility in Grottoes, Virginia.

3.    Mullins desired to leave the Etsy.com platform and form his own website for sales directly to consumers.

4.    The new website would allow Mullins to grow his business, decrease production problems, and avoid fees associated with selling through Etsy.com.

1

*EXHIBIT 1*

5.     Mullins interviewed around 15-20 web development companies, including ExpandLab, LLC ("ExpandLab").

6.     Visiture is the successor in interest to ExpandLab via acquisition or merger.

7.     Visiture conducts substantial business activity in Virginia, contracted to supply services and things to Mullins in Rockingham County, and this cause of action arises out of Visiture's contacts with this forum.

8.     Mullins required a complete website, including an e-commerce platform and the ability for customers to upload their chosen image onto his wood products, size and place the image, and preview the final product before ordering.

9.     This "uploader" feature would allow for automatic sizing of the image and efficient printing based on the customer's preference of size and location, because the resized or edited photo could be sent directly to the printer for production. This feature would also eliminate the need for Mullins to manually resize the image, which would cut down on reprints and increase the speed of fulfilling orders and the number of products Mullins would be able to sell.

10.     The e-commerce platform of Mullins' desired website would eliminate fees associated with Etsy and would open up new business opportunities for Mullins that are not available by remaining on the Etsy platform, including with Groupon.

11.     In his meetings with web developers, Mullins explained the functionality he required for the new website, including the uploader feature.

12.     Mullins had approximately 50-60 conversations with Dennis Ngin, COO of ExpandLab and now COO of Visiture. These conversations took place while Mullins was located in Virginia.

2

13.     Mullins told Ngin of the website's requirements, including the uploader feature. Ngin and other ExpandLab employees told Mullins that the website he required was "easy to do" and they held themselves out as having a close relationship with other major companies.

14.     Based on these representations, Mullins entered into a contract with ExpandLab to develop the website.

15.     On December 22, 2017, Mullins signed a Master Services Agreement ("MSA") and Statement of Work ("SOW") with ExpandLab. Ngin signed on behalf of ExpandLab. True copies of the MSA and SOW are attached hereto as **Exhibits A and B**.

16.     The MSA states that in the event of a conflict between the terms of the two documents, the SOW controls. (MSA § II(A)).

17.     Consistent with Ngin's representations to Mullins, the MSA included the following express representations and warranties:

> ExpandLab has the experience and skills to perform the Services and create the Work Product with a high standard of quality and in a workmanlike and professional manner, in accordance with industry standards. (MSA § VI(C)(a)).

> All Services and Work Product furnished by ExpandLab will be in conformance with any written performance criteria agreed upon by both Parties, including but not limited to any executed SOW. (MSA § VI(C)(b)).

> ExpandLab shall not outsource or subcontract to any other Party any of its Services for Client under this Agreement without Client's prior written consent. (MSA § VI(C)(g)).

18.     The SOW confirmed Mullins' requirements for certain features that he had discussed with Ngin, including the uploader feature he had specifically requested.

3

19.    The SOW confirmed that the following "Products" and "Transactional Features" would be delivered to Mullins: "when a customer uploads a photo for editing; have the original photo and edited photo available for production." (SOW at p. 5).

20.    The SOW required that the launch of the new website, to include the uploader feature, would occur within "2-4 months from signing" of the SOW on December 22, 2017, so by approximately February to April 2018.

21.    The MSA defined "Confidential Information" to include Mullins' plans to grow his business, the terms of the MSA, information regarding products or plans for products, and similar information. (MSA § I(C)). The MSA provided that Confidential Information could not be used or disclosed with Mullins' written authorization. (MSA § V).

22.    Visiture acquired or merged with ExpandLab in or around February 2018.

23.    Ngin became COO of Visiture, and the creative team and other employees of ExpandLab began working for Visiture.

24.    Visiture also assumed, affirmed, and ratified the MSA and SOW with Mullins, and began performing the development work required under those contracts for Mullins.

25.    Visiture is a mere continuation of, or de facto merger with, ExpandLab. There is a continuity of executives and employees and the same business has been continued.

26.    After Visiture acquired or merged with ExpandLab in February 2018, Mullins had weekly development meetings with Visiture employees beginning in August 2018 over the phone and by video conference. These meetings occurred while Mullins was located in Virginia.

27.    The SOW required completion of the new website by April 2018. Around that time, Ngin informed Mullins that the new website would be delayed to August 2018.

4

28.   Visiture has not completed the website. It has been more than a year since the completion date required by the SOW.

29.   On April 29, 2019, Ngin informed Mullins by e-mail that "producing a web-photo-edited file available for print isn't possible for your print application."

30.   In reference to this feature, Ryan Jones, Visiture's Vice President of Operations, informed Mullins, "we sell the job and then ... figure it out."

31.   A fundamental requirement of the new website, as Mullins had explained to Ngin before contracting with ExpandLab, was to allow customers to upload their own photos, see their photo on a template of the wood product on which they wanted the photo printed, be able to resize and adjust the placement of the photo, and have the final, edited image available to Mullins in the size needed for production.

32.   The failure to deliver the website on time and the failure to deliver the website with the uploader feature is a breach of the MSA and SOW.

33.   Ngin also informed Mullins that Visiture had contacted third parties, including Mullins' competitor, to discuss the uploader function.

34.   The discussion of Mullins and his plans for a new website and business is a breach of the confidentiality provisions of Sections I(C) and V of the MSA.

35.   Upon information and belief, Visiture subcontracted the work it was performing for Mullins to third parties. During a web-based meeting between Mullins and Visiture, Visiture's computer screen showed that it was discussing with third party web developers how to build the uploader feature required by the SOW.

36.     Visiture breached the representations and warranties set forth in Sections VI(C)(a) and (g) of the MSA that it would not outsource or subcontract the work without Mullins' consent and that it had the experience and skills to perform the requirements of the parties' contract.

37.     Mullins provided notice of breach and termination. Visiture did not cure the breach and cannot cure the breach, as it does not have the ability to complete the requirements of the SOW.

38.     Visiture also informed Mullins that it had stopped all development work.

39.     Visiture is required to deliver all work product and other information relating to Mullins upon termination of the parties' contract. (MSA § IV(B)). Visiture has failed to do so.

40.     Mullins paid Visiture $65,000. Mullins has also incurred lost business opportunities and additional fees that it would have avoided if the website had been completed as scheduled in the approximate amount of $100,000.

41.     The MSA provides that Mullins is entitled to recovery of his legal expenses, including reasonable attorney's fees, costs, losses, and damages as a result of any allegations, claims, demands, costs, suits, or actions arising out of or relating to the provision of services or work product under the MSA. (MSA § VI(A)).

## Count I – Breach of Contract

42.     Mullins incorporates the above allegations.

43.     The MSA and SOW represent a valid and enforceable contract between Mullins and Visiture.

44.     Visiture breached the MSA and SOW, including by failing to complete the contract on time, failing to provide the required Products and Transactional Features set forth in the SOW, disclosing Mullins' confidential information to third parties, outsourcing or

6

subcontracting the work without Mullins' written authorization, failing to have the experience and skills to perform the contract, failing to provide a product with a high standard of quality and in a workmanlike and professional manner in accordance with industry standards, failing to deliver the website to Mullins in conformance with the written performance criteria agreed upon by the parties, including the SOW, and failing to return the work product and information relating to Mullins.

45.     Mullins has been damaged as a result.

WHEREFORE, Plaintiff Patrick Mullins d/b/a Mullins Enterprises, d/b/a MyWoodPhoto, requests entry of judgment against Defendant Visiture, LLC, in the amount of $165,000, plus legal expenses including attorney's fees and interest at the judgment rate, and an order requiring Visiture to return all work product and other information relating to the work performed for Mullins and MyWoodPhoto, together with such additional relief the Court deems proper.

_____
ANDREW S. BAUGHER (VSB #74663)
Flora Pettit PC
90 North Main Street, Suite 201
P. O. Box 1287
Harrisonburg, Virginia 22803
Tel: (540) 437-3138
Fax: (540) 437-3101
asb@fplegal.com
*Counsel for Plaintiff*

<u>CERTIFICATE</u>

I certify that a true copy of the foregoing Complaint was sent by mail and e-mail on May 24, 2019 to:

Brian Cohen, Registered Agent
Visiture, LLC
1001 Jamsie Cove Dr.
Charleston, SC 29412

*Counsel for Plaintiff*

756937

DocuSign Envelope ID: A8AA3237-60D2-40A8-9863-A311D677A59A



# MASTER SERVICES AGREEMENT



MYWOODPHOTO



EXHIBIT

A

DocuSign Envelope ID: A8AA3237-60D2-40A8-9863-A311D677A59A



This Master Services Agreement ("MSA" or "Agreement") is made and entered into as of the Effective Date, by and between **Mullins Enterprises**, a company located at **3236 Mountain Farm Road, Elkton, VA, 22827** ("**Client**") and ExpandLab, LLC, a company organized under the laws of the State of Georgia with its principal place of business at 296 14th Street, NW, Atlanta, GA 30318 ("**ExpandLab**") (collectively the "**Parties**", and, individually, a "**Party**").

### Recitals

**Whereas**, ExpandLab offers website development services to clients, including without limitation, Magento development services for eCommerce websites;

**Whereas**, Client wishes to engage the eCommerce development services of ExpandLab; and

**Whereas**, ExpandLab and Client wish to confirm the terms and conditions of their relationship by entering into this Agreement;

**Now, Therefore**, for and in consideration of the agreements set forth herein, and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties agree as follows:

**I.** <u>Definitions</u>

For purposes of this Agreement, the following terms shall have the meanings set forth below:

**A.** **"Background Technology"** shall have the meaning set forth in Section IV of this Agreement.

**B.** **"Changes in Scope"** shall have the meaning set forth in Section II of this Agreement.

**C.** **"Confidential Information"** shall mean (a) the identity, business, or ordering habits or history of Client's customers, (b) Client's plans to grow its business or its prospective customers, (c) Client's trade secrets, inventions, computer source and object code; (d) the terms of this Agreement; (e) information regarding products or plans for products, marketing, budgets, financial statements, contracts, prices, suppliers, and customers; (f) information regarding the skills and compensation of Client's employees, and contractors; (g) any business discussions between Client and any third party; and (h) information related to a third party that is disclosed to Client or to ExpandLab through Client's business; and (i) any other information that Client treats as confidential. Confidential Information shall not include information which: (i) is or becomes publicly available through no act or omission of ExpandLab; (ii) was rightfully in ExpandLab's possession prior to the disclosure (as evidenced by contemporaneous documentation) and had not been obtained either directly or indirectly from Client; (iii) is lawfully disclosed to ExpandLab by a third party without restriction on disclosure; or (iv) is independently developed by ExpandLab, without use of any Confidential Information of Client, by persons who had no access to such Confidential Information.

**D.** **"Effective Date"** shall mean the last date on which this Agreement has been executed by both Parties.

**E.** **"Intellectual Property"** shall mean any or all of the following: (a) all patents and applications therefor and all reissues, divisions, renewals, extensions, provisionals, continuations and continuations-in-part thereof; (b) all inventions (whether patentable or not), invention disclosures, improvements, proprietary information, technology, data and customer lists, and all documentation relating to any of the foregoing; (c) all copyrights, copyright registrations and applications therefor, and all other rights corresponding thereto; (d) all industrial designs and any registrations and applications therefor; (e) all internet uniform resource locators, domain names, trade names, logos, slogans, designs, common law trademarks and service marks, trademark and service mark registrations and applications therefor; (f) all trade secrets and know-how; (g) all databases and data collections and all rights therein; (h) all moral and economic rights of authors

DocuSign Envelope ID: A8AA3237-60D2-40A8-9863-A311D677A59A



and inventors, however denominated; and (i) all rights arising out of or associated with any of the foregoing.

F.   **"Magento"** shall mean the eCommerce platform utilized by Client for its eCommerce website.

G.   "Service Fees" shall have the meaning set forth in Section III of this Agreement.

H.   "Services" shall have the meaning set forth in Section II of this Agreement.

I.   **Software Development Life Cycle ("SDLC")** shall mean a process for planning, creating, testing and deploying an information system, including, without limitation, Client's eCommerce website.

J.   **Statement of Work ("SOW")** shall have the meaning set forth in Section II of this Agreement.

K.   **"Work Product"** shall mean the work product resulting from the Services provided to Client pursuant to this Agreement, including all Intellectual Property incorporated therein, and will be described in the requirements sessions, BaseCamp requests, ticket submissions, and in any SOWs executed by both Parties.

## II.   Engagement and Performance of Services

### A.  Statements of Work

ExpandLab shall provide certain services to Client (**"Services"**) as defined in one or more mutually agreed-upon project agreements between the Parties (**"Statements of Work"** or **"SOWs"**). Upon execution by both Parties, a SOW shall become a part of and be incorporated into this Agreement.

Each SOW shall contain, to the extent applicable:
a.   a description of the Services to be performed;
b.   a description of any required deliverables;
c.   a description of any Intellectual Property Rights;
d.   any service level agreements;
e.   any associated schedules;
f.   the applicable Service Fees (which shall be on a time and materials basis unless specified in the SOW);
g.   project support hours; and
h.   such additional information as the Parties agree.

In the event of a conflict between any term of this MSA and the SOW, the terms of the SOW will prevail.

### B.  Changes in Scope of Services

If ExpandLab, with the prior written consent of Client, performs work that is not covered by a SOW or that exceeds the scope of services defined in the applicable SOW (**"Changes in Scope"**), such work shall be deemed services provided pursuant to this MSA for which Client shall compensate ExpandLab pursuant to this Agreement.  Changes in Scope shall be set forth in a separate SOW or Project Change Request and shall not be effective until executed by both Parties hereto.

### C.  Duration of Services

The duration of performance of Services under this MSA are governed by the terms contained in each SOW.

### D.  Project Management

ExpandLab will issue project reports with comprehensive status updates on a regular basis. These reports will indicate the work activities performed and progress achieved against project milestones. ExpandLab will be using BaseCamp (37 Signals) to manage Client expectations and deliverables at http://expandlab.basecamphq.com, or such other address as desigated by ExpandLab.

DocuSign Envelope ID: A8AA3237-60D2-40A6-9863-A311D877A59A



**E.  Independent Contractor Relationship**
ExpandLab's relationship with Client will be as an independent contractor, and nothing in this Agreement should be construed to create a partnership, joint venture, or employer-employee relationship.  ExpandLab (a) is not the agent of Client; (b) is not authorized to make any commitment on behalf of Client; (c) will not be entitled to any of the benefits that Client makes available to its employees; and (d) will be solely responsible for its own tax returns. As an independent contractor, ExpandLab shall be solely responsible for any tax consequences of the Service Fees received.  If applicable, Client will report amounts paid to ExpandLab by filing Form 1099-MISC with the Internal Revenue Service. ExpandLab agrees to fill out form W-9 as required by Client. ExpandLab agrees to accept exclusive liability for complying with all applicable state and federal tax laws. ExpandLab acknowledges that Client will not withhold or make payments for social security, unemployment insurance or disability insurance contributions, or obtain workers' compensation insurance on ExpandLab's behalf.

ExpandLab will perform in accordance with best practice SDLC procedures. The methods that ExpandLab chooses to complete any project detailed in a SOW are in ExpandLab's sole discretion and control. In completing a project, ExpandLab agrees to provide its own equipment, tools, and other materials at its own expense.

**III.   Fees and Expenses**

**A.  Services Fees**
During the term of this Agreement, Client shall pay to the Services Provider the fees as set forth in each SOW ("**Service Fees**").  ExpandLab shall obtain prior written approval from Client for all work performed under this Agreement.  ExpandLab shall not receive any compensation, payments or benefits from Client in addition to those described herein or in a SOW.  ExpandLab acknowledges and agrees that the Service Fees reflect full payment for all hours worked.

**B.  Payment Terms**
ExpandLab shall submit invoices in a timely manner, and in no event shall any invoices be submitted later than thirty (30) days after the completion of Services under any SOW.  The Service Fees shall be payable within thirty (30) days following submission of the invoice. If payment of any invoice is not received timely, ExpandLab reserves the right to discontinue Services.

In the event of any good faith dispute with regard to a portion of an amount payable, the undisputed portion shall be paid pursuant to the MSA. Upon resolution of the disputed portion, any amounts owed to ExpandLab shall be paid with interest at the rate set forth below accruing from the date such amounts were originally due.

Late payments of any kind due and payable under this Agreement shall accrue interest daily following the due date at the lesser of six percent (6.00%) per annum or the maximum interest allowed by applicable law.

**C.  Expenses**
Unless otherwise stated in the SOW, ExpandLab shall be reimbursed by Client for all reasonable expenses incurred by ExpandLab in the performance of the Services, including, but not limited to, software extension purchases, travel and lodging expenses, communications charges, and computer time and supplies. Any such expenses must be agreed to by Client in writing prior to the incurrence of such expense.

**D.  Taxes**
Client shall be responsible for any sales, use, excise, value-added, services, consumption, and other taxes and duties assessed on the Services provided by ExpandLab to Client.

DocuSign Envelope ID: A8AA3237-60D2-40A8-9863-A311D677A59A



IV.   **Intellectual Property Rights**

    **A.  Background Technology**
As used in this Agreement, the term **"Background Technology"** means all Intellectual Property developed by ExpandLab other than in the course of providing Services or Work Product to Client and all Intellectual Property acquired from third parties or licensed by ExpandLab from a third party that ExpandLab uses in performing Services under this Agreement or incorporates into Work Product. ExpandLab will specifically disclose to Client in writing any Background Technology, which ExpandLab proposes to use or incorporate.

    **B.  Ownership and Assignment of Work Product**
The Parties hereby acknowledge and agree that all Work Product, exclusive of any Background Technology, has been specially ordered and commissioned by Client as a work-made-for-hire and Client shall exclusively own all worldwide right, title and interest thereto.  Client shall be considered the author of the Work Product for purposes of copyright, own all rights in and to the copyright of the Work Product and shall have the right to register and renew the copyright in the Work Product in its name in all jurisdictions throughout the world.  If, by operation of law or otherwise, any of the Work Product, including all related Intellectual Property, is not owned in its entirety by the Client automatically upon the creation thereof, ExpandLab agrees to assign and to cause its personnel and contractors to assign, and hereby assigns, to Client the ownership of such Work Product. ExpandLab represents and warrants that it has the full right and authority to use, transfer, implement, install, assign, and convey the Work Product to Client. ExpandLab agrees to execute all documents and instruments reasonably requested by Client to document Client's ownership of the Work Product, provided that Client assumes responsibility for legal and all other costs related to this request.

ExpandLab hereby grants to Client a non-exclusive, transferable, royalty-free, perpetual, irrevocable, worldwide right and license under and to the Background Technology for the purpose of utilizing the Work Product and Services provided by ExpandLab. Nothing in this section shall give Client the right to license or transfer stand-alone Background Technology to third parties.

Upon termination of this Agreement or any SOW, ExpandLab and/or ExpandLab personnel or contractors shall deliver to Client all Work Product and other information and materials prepared by ExpandLab and/or ExpandLab's personnel or contractors or received from Client in the performance of the Services, whether completed or in progress. Reuse of any such Work Product by ExpandLab and/or ExpandLab's personnel or contractors without written permission by Client is prohibited.

Client acknowledges and agrees that, as a result of furnishing the services as contemplated herein, ExpandLab may further develop its general knowledge, skills, and experience. Subject to the terms of this Agreement, the subsequent use by ExpandLab and its personnel of such general knowledge, skills, and experience shall not constitute a breach of this Agreement.

    **C.  License to or Waiver of Other Rights**
If ExpandLab has any right to the Work Product that cannot be assigned by ExpandLab, ExpandLab unconditionally grants to Client during the term of such rights, an exclusive license, with rights to sublicense, to exercise all rights related to such Work Product. If ExpandLab has any rights to the Work Product licensed, then ExpandLab waives the enforcement of such rights, and agrees, at Client's request and expense, to enforce such rights.

    **D.  Trademark Protection**
ExpandLab may not use Client's name or trademarks in advertising, sales promotion, or publicity material without Client's prior, written consent.

V.   **Confidential Information**
Unless authorized in writing by Client, ExpandLab agrees it (a) will not use Confidential Information in a manner not expressly set forth in this Agreement; (b) will not disclose any such Confidential Information without first obtaining Client's express written consent; (c) will limit access to Confidential Information to

DocuSign Envelope ID: A8AA3237-60D2-40A8-9863-A311D677A59A



ExpandLab personnel to the extent necessary for the performance of its duties under the Agreement; and (d) will not remove any Confidential Information from Client's premises without Client's written consent.

## VI.    Indemnification, Limitation of Liability, and Representations and Warranties

### A.  Indemnification

ExpandLab shall indemnify, defend, and hold harmless Client, its officers, directors, affiliates, employees and agents (collectively, "**Client Indemnitees**") from any and all liabilities, expenses (including reasonable attorney's fees, court fees, and experts' fees), costs, losses, and damages (collectively, "**Indemnified Expenses**") that Client Indemnitees may suffer as a result of allegations, claims, demands, costs, suits, or actions arising out of or relating to the provision of Services or the Work Product by ExpandLab under this Agreement, including without limitation from any of the following: (i) any allegedly unauthorized use or infringement of any patent, process, idea, invention, method, trademark, copyright or device or other Intellectual Property or tangible proprietary right; (ii) any alleged defect in any of the Work Product; (iii) ExpandLab's breach or alleged breach of any of its obligations, representations or warranties under this Agreement; and (iv) the negligence or willful misconduct of ExpandLab.  Client's approvals under this Agreement shall not relieve ExpandLab of its indemnity or other obligations under this Agreement.

In addition to ExpandLab's indemnification obligations set forth above and any other remedies of Client, should ExpandLab become aware that the Services or the Work Product (or should ExpandLab reasonably should have been known) may become subject to a claim of infringement, ExpandLab shall immediately notify Client.  In such event, ExpandLab will have the option, in ExpandLab's reasonable discretion, to (i) replace any portions of the Services or Work Product; (ii) modify the Services, Work Product, or any portions thereof to make it non-infringing; or (iii) cancel the Services and refund the fees paid by Client hereunder for the Services.

### B.  Limitation of Liability

IN NO EVENT SHALL EITHER PARTY'S TOTAL LIABILITY TO THE OTHER PARTY EXCEED THE TOTAL AGGREGATE SERVICE FEES (EXCLUDING FEES PAID TO THIRD PARTIES) PAID BY CLIENT TO EXPANDLAB UNDER THIS AGREEMENT AND ANY SOW.  NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THIS PARAGRAPH, THE LIMITATION OF LIABILITY SHALL NOT APPLY TO EXPANDLAB'S INDEMNIFICATION OBLIGATIONS UNDER THIS SECTION VI.

IN NO EVENT SHALL EITHER PARTY BE LIABLE FOR ANY INDIRECT, SPECIAL, INCIDENTAL OR CONSEQUENTIAL DAMAGES OR LOSS (INCLUDING DAMAGES FOR LOSS OF BUSINESS, LOSS OF PROFITS, OR THE LIKE) WHETHER BASED ON BREACH OF CONTRACT, TORT (INCLUDING NEGLIGENCE), PRODUCT LIABILITY OR OTHERWISE, EVEN IF SUCH PARTY OR ITS REPRESENTATIVES HAVE BEEN ADVISED OF THE POSSIBLITY OF SUCH DAMAGES.

OTHER THAN AS EXPRESSLY SET FORTH IN THIS AGREEMENT, EXPANDLAB, ITS AFFILIATES AND ALL OF THEIR OFFICERS, DIRECTORS, EMPLOYEES, SHAREHOLDERS, AGENTS OR REPRESENTATIVES DO NOT MAKE ANY EXPRESS OR IMPLIED WARRANTIES, CONDITIONS, OR REPRESENTATIONS TO CLIENT, OR ANY OTHER PERSON OR ENTITY WITH RESPECT TO THE SERVICES OR OTHER DELIVERABLES PROVIDED HEREUNDER OR OTHERWISE (INCLUDING, BUT NOT LIMITED TO, ANY THIRD PARTY SOFTWARE OR SERVICES OR SERVICES USED IN CONNECTION WITH THE SERVICES) REGARDING THIS AGREEMENT, WHETHER ORAL OR WRITTEN, EXPRESS, IMPLIED OR STATUTORY. WITHOUT LIMITING THE FOREGOING, ANY IMPLIED WARRANTY OR CONDITION OF MERCHANTABILITY, AND THE IMPLIED WARRANTY OR CONDITION OF FITNESS FOR A PARTICULAR PURPOSE ARE EXPRESSLY EXCLUDED AND DISCLAIMED.

DocuSign Envelope ID: A8AA3237-60D2-40A8-9863-A311D677A59A



### C.  Representations and Warranties

ExpandLab represents and warrants to Client that:

a.  ExpandLab has the experience and skills to perform the Services and create the Work Product with a high standard of quality and in a workmanlike and professional manner, in accordance with industry standards;

b.  All Services and Work Product furnished by ExpandLab will be in conformance with any written performance criteria agreed upon by both Parties, including but not limited to any executed SOW.

c.  ExpandLab has made or shall make all payments, including those required by law, to and on behalf of all employees and third party contractors ExpandLab uses to perform Services. ExpandLab has or shall verify its employees are legally able to work in the United States;

d.  Client will receive good and valid title to all Work Product delivered by ExpandLab to Client under this Agreement, free and clear of all encumbrances and liens of any type;

e.  The Work Product, Services, and the use of Work Product by Client does not and will not infringe or misappropriate the Intellectual Property rights of any third party;

f.  ExpandLab's acceptance of engagement by Client hereunder does not violate and will not violate any contract or agreement to which ExpandLab is a party and does not or will not result in a breach by ExpandLab of any covenant of nondisclosure or noncompetition or any other covenant or agreements owed by ExpandLab to any third party; and

g.  ExpandLab shall not outsource or subcontract to any other Party any of its Services for Client under this Agreement without Client's prior written consent.

## VII.   Termination

### A.  Termination with Cause

Either Party may terminate this Agreement and any SOWs if the other Party has breached the Agreement and fails to cure such breach within thirty (30) days of notice from the other Party, setting forth the nature of the breach. Client may terminate this Agreement immediately if ExpandLab's breaches any of its duties under the section titled "Intellectual Property Rights".

### B.  Termination without Cause

Either Party may terminate this Agreement with sixty (60) days' written notice, unless otherwise stated in a SOW. Upon such termination, amounts payable by Client to ExpandLab for Services provided prior to the termination date will be due to ExpandLab immediately. Client shall be refunded for any deposit payment, pre-paid payment, or retainer payments to the extent such payments exceed any amount owed by Client to ExpandLab upon the termination date.

### C.  Return of Property

Upon termination of the Agreement or upon Client's request, ExpandLab will deliver to Client all of Client's property or Confidential Information.

### D.  Survival

Sections IV, V, VI, VII.C., and VIII shall survive the termination or expiration of this Agreement.

## VIII.   General Provisions

### A.  Governing Laws and Venue

DocuSign Envelope ID: A8AA3237-60D2-40A8-9863-A311D677A59A

 ExpandLab

Any action arising from this Agreement will be governed by the laws of the State of Georgia, without giving effect to any conflicts of laws principles that require the application of the law of a different jurisdiction. Client and ExpandLab consent to the personal jurisdiction and venue in the state and federal courts for Fulton County, Georgia.

**B.  Successors and Assigns**

This Agreement is binding upon the Parties hereto and their respective successors in interest, but with respect to ExpandLab, this Agreement is nondivisible, nontransferable, and nonassignable. ExpandLab shall give Client written notice of the name and address of any proposed subcontractor and no such agreement shall become effective until Client shall have approved the same in writing, in Client's sole discretion. Any such subcontract shall incorporate and be subject to the provisions of this Agreement, and ExpandLab shall remain responsible for all Services and Work Product provided thereunder. Client shall have the right, by written notice to ExpandLab, to assign its rights and/or obligations under this Agreement to an affiliated company, or to any entity which succeeds to the interests of Client. ExpandLab may assign its rights and/or obligations under this Agreement to any entity which succeeds to the interests of ExplandLab, with the prior written consent of Client, which consent shall be in Client's sole discretion..

**C.  Severability**

If any provision of this Agreement is invalid or unenforceable, the other provisions will be unimpaired and the unenforceable provision shall be modified so that it is enforceable.

**D.  Waiver**

Any waiver or failure to enforce any provision will not be deemed a waiver of any other provision or future waiver of such provision.

**E.  Entire Agreement**

This Agreement (including all related SOWs) is the final, complete and exclusive agreement of the Parties with respect to the subject matters hereof and supersedes and merges all prior discussions between the Parties with respect to such subject matter. No modification will be effective unless in writing and signed by Parties.

**F.  Force Majeure**

If either Party is prevented from completing performance of any or all of its obligations under this Agreement by any cause or causes beyond its reasonable control, including but not limited to acts of God, acts or omissions of any government or any rules, regulations, or orders of any governmental authority or any officer, department, agency, or instrument thereof, fire, storm, earthquake, accident, acts of the public enemy, war, rebellion, Internet brown out, Internet virus attack, insurrection, riot, invasion, strikes, or lockouts, then it shall be excused from further performance on notice to the other Party, stating the reason for the nonperformance.

**G.  Non-Solicitation**

Neither Party, nor any its subsidiaries, affiliates, employees, or other agents, will, either directly or indirectly (i) solicit, entice, or induce the employment of any employee of the other Party who was involved in the provision of or receipt of Services under this Agreement during that employee's employment with the other Party and for a period of six (6) months following the termination of such employee's employment with the other Party. In the event a Party solicits or hires the services of any individual in violation of this paragraph, that Party shall pay the other Party, as its exclusive and sole remedy, an amount equal to six (6) months of the individual's total compensation based on the individual's rate of compensation immediately prior to the breach.

**H.  Notices**

All notices, requests, demands and other communications shall be validly given if sent by prepaid, registered or certified mail or recognized courier with delivery confirmation to the recipient Party's address appearing in the first paragraph of this Agreement, ATTN: LEGAL, unless such Party has notified the other Party of a substitute address in writing, and shall be deemed validly delivered upon the date of sending.

DocuSign Envelope ID: A8AA3237-60D2-40A8-9863-A311D677A59A



### I.   Headings

The headings, titles, and subtitles of the Sections of this Agreement are for convenience only and shall not be considered as being part of this Agreement and are of no legal effect.

### J.   Authority

Each Party represents and warrants to the other that it has full power and authority to enter into this Agreement and to perform its obligations hereunder including, if necessary, having received authority from its Board of Directors or Board of Managers.

### K.   Counterparts; Electronic Signature

This Agreement may be signed in counterparts, each of which will be deemed to be an original as against any Party whose signature appears thereon and all of which together constitute one and the same instrument.  This Agreement will become binding when one or more counterparts hereof, individually or taken together, will bear the signature of all of the Parties reflected hereon as signatories.  A faxed, emailed, or electronic signature will have the same legally binding effect as an original signature.

*[Signatures Appear on Following Page]*

DocuSign Envelope ID: A8AA3237-60D2-40A8-9863-A311D677A59A

 ExpandLab

**IN WITNESS WHEREOF,** the Parties hereto, each acting with proper authority, have executed this Master Services Agreement, as of the Effective Date.

| Mullins Enterprises | ExpandLab, LLC |
|---|---|
| *Patrick Mullins* | *Dennis Ngin* |
| Signature | Signature |
| Patrick Mullins | Dennis Ngin |
| Printed Name | Printed Name |
| Owner | COO |
| Title | Title |
| 12/22/2017 | 12/10/2017 |
| Date Signed | Date Signed |

DocuSign Envelope ID: A8AA3237-60D2-40A8-9863-A311D677A59A



# STATEMENT OF WORK - PROJECT



MYWOODPHOTO



EXHIBIT

tabbies'

B

DocuSign Envelope ID: A8AA3237-60D2-40A8-9863-A311D677A59A



## STATEMENT OF WORK

This STATEMENT OF WORK ("SOW") is entered into between **ExpandLab, LLC,** a Georgia limited liability company with offices at 296 14th Street NW, Atlanta, GA 30318 ("ExpandLab") and **Mullins Enterprises,** a company located at **3236 Mountain Farm Road. Elkton, VA, 22827 ("Client")** as of **November 17, 2017** (the **"SOW Effective Date"**) pursuant to the Master Services Agreement dated the **November 17, 2017** (the **"MSA"**) between the Parties, the terms of which are incorporated herein by reference. Terms used herein and not otherwise defined shall have the meanings as set forth in the MSA.

## KEY DELIVERABLES & ASSUMPTIONS

ExpandLab will deliver the Services described below and any changes shall be subject to a Project Change Request approved and confirmed in writing by both Parties. ExpandLab will implement the capabilities outlined based on the following platform definitions.

| | |
|---|---|
| eCommerce Platform | Magento 2.x |
| Admin Count | 3+ |
| ERP System Integration | Not Applicable |
| Estimated Launch | TBD (2-4 months from signing) |

## GENERAL GOALS

The primary goals of this project are:
- Develop a new eCommerce store for www.mywoodphoto.com using the Magento 2.x Open Source platform
- Design/Develop a mobile responsive Magento theme that leverages Magento's default Luma theme and aligns with Client's brand image while delivering a friendly UI/UX

DocuSign Envelope ID: A8AA3237-60D2-40A8-9863-A311D677A59A



## PROJECT PHASES

### DISCOVERY

During Discovery, the joint project team works to understand project objectives, business processes, key performance indicators, organizational impacts and change management requirements. Project team meetings and discovery sessions are conducted resulting in the definition of an initial project footprint and preliminary documentation.

ExpandLab will facilitate business Requirements Analysis Session(s) to define and analyze business conditions, design goals, and features in order to discover the options and recommendations associated with building a new responsive theme on the Magento platform. As a result of the session(s), the Client and ExpandLab teams will have clear written definitions for the following:

- The strategic goals of the client and the role of Magento
- Departmental considerations, interdependencies and requirements
- The overall project footprint and configuration definition
- Reporting requirements
- The training plan and the role of management in delivering training
- Potential phasing considerations and recommendations in order to stay on track with project timeline
- Timelines, roles, key players and key dates associated with the project
- More detailed understanding of hours and service fees needed to complete the project

Since catalog architecture plays a significant part in driving site user experience, ExpandLab will verify the catalog adjustments needed to ensure it follows industry eCommerce best practices and are aligned with Client's design goals.

**Key Deliverables and Activities:**
- Site & Features Audit
- Requirements Analysis Session(s)
- Requirements Review(s)
- Estimate & Timeline Validation

### ASSUMPTIONS

- Client will make key business managers, users and necessary IT resources available to participate in workshops and follow-up conversations during this phase.
- At the conclusion of Discovery, ExpandLab will provide Client with any necessary revisions to the initial estimate.

---

DocuSign Envelope ID: A8AA3237-60D2-40A8-9863-A311D677A59A

 ExpandLab

## DESIGN

During Design, the project team works with the information gathered and prepared during Discovery to design the user flows for responsive design. ExpandLab will create overall conceptual designs for the Client, which will require written approval before UI Development begins. ExpandLab will create a prototype of critical path pages and begin to code Magento templates following this stage.

**Key Deliverables and Activities:**

- Leverage UI/UX Strategy for an improved Customer Shopping Experience
- Minimize design and front-end development services by leveraging Magento's default responsive theme; Luma.

## ASSUMPTIONS

- Members of Client's project team and key stakeholders will be available to participate in critical review meetings and to provide feedback in a timely manner.
- Client will have up to two rounds of revisions once design has been completed. If additional rounds of revisions are required, Client understands that this may result in additional budget requested via a Project Change Request.

DocuSign Envelope ID: A8AA3237-60D2-40A8-9863-A311D677A59A



## DEVELOPMENT

During Development, all elements of the project are brought together into a functional solution. This includes applicable UI/UX Design, Development, Magento Configuration, Integrations, and Custom Development required to align the systems with overall functionality, requirements and processes. ExpandLab will collaborate with the Client's project team regarding the development and implementation steps for their Magento platform. Key features and functionality for development are listed below. These features/functionality will be detailed with solutions upon completion of the Discovery phase.

ExpandLab will conduct multiple iterations of QA and visual QA testing and validation throughout the Development phase to ensure adherence to requirements. This includes thorough review of any data imported into the system and confirmation of data flow between integrated systems. After all major systems and processes are successfully QA'd by ExpandLab, ExpandLab will pass front-end web store and 3rd party UAT testing to client for general user acceptance testing to ensure an ideal user experience and appropriate interface.

**Key Features & Functionality for Development**

| Platform | Develop new Magento 2.x Open Source platform |
|---|---|
| **Transactional Features** | **Products (Customer Experience)**<br>• Develop functionality to allow customers to upload a photo on the product page<br>    ○ To Validate – allow customers to edit/crop photos that they upload within the web portal<br>    ○ To Validate – allow customers to upload photos for plank products and see where the approximate cut-offs (lines on the board) would appear on their photo<br>    ○ To Validate – allow customers to upload photos onto a circular/oval shape, showing approximately where photos will be cut off<br>    ○ To Validate – allow customers to rotate photo<br>    ○ To Validate - allow customers to recolor photo to black and white<br>    ○ To Validate - when a customer uploads a photo for editing; have the original photo and edited photo available for production<br>    ○ To Validate - do not allow any other photo editing and/or customization<br>• Develop functionality to allow customers to input custom text on the back of their product; with cut-off at 100 characters<br>    ○ To Validate – allow customers to see their text in a selected font<br><br>**Payment**<br>• Install/configure payment processing (Authorize.Net, Braintree, or Merchant e-Solutions / Paypal)<br>• Configure tax rules<br><br>**Shipping**<br>• Develop functionality to charge rush-processing at Checkout - $XX Fee added to overall order for rush production<br>• Configure shipping rules (USPS) |

DocuSign Envelope ID: A8AA3237-60D2-40A8-9863-A311D677A59A



| | |
|---|---|
| | **Order Processing** <br> • Configure transactional emails |
| **Content & Data** | • Configure functionality to enable customer reviews <br> • Install/configure functionality to share products (facebook, Instagram, and email) |
| **Other Integrations** | • Install/Configure shipment management solution (e.g. ShipStation or ShipWorks) <br> • Install/Configure Google Analytics <br> • Install/Configure email management solution (e.g. MailChimp or Springbot) |
| **Other Customizations** | • Not Applicable |
| **Other Development** | • Establish development, staging, and product environments |

## ASSUMPTIONS

- Members of Client's project team and key stakeholders will be available to participate in critical review meetings and to provide feedback in a timely manner.
- UI Development for up to 3 responsive breakpoints (Desktop, Tablet, and Mobile Smart Phones – Portrait Orientations & Landscape) will be planned into the project.
- Bootstrap Framework will be leveraged to build the site in responsive.
- Browser compatibility with IE, Chrome, Firefox, Safari, iOS – Safari, and Android – Native Browser & Chrome will be planned into the project.
- Client is responsible for providing photography, content, and design assets in the format and resolutions needed.
- Client is responsible for providing, formatting, and setting up catalog data to ExpandLab's specifications. ExpandLab will provide a base template and guidelines to begin the data setup effort.
- Client is responsible for verifying functionality of all third-party modules (extensions).

DocuSign Envelope ID: A8AA3237-60D2-40A8-9863-A311D677A59A

 ExpandLab

## DEPLOY

The goal of Deploy is to perform user acceptance testing (UAT) and push our solution to a production or "live" environment. Deployment is the final phase of the core project. Customer sign-off of the solution signifies the completion of the project. ExpandLab will collaborate with the Client's project team regarding the development and implementation steps for their Magento platform.

**Key Deliverables and Activities:**
- QA Test Plan:
  - Local (Developers Test)
  - SEO Audit and Migration Redirects
  - Development (Internal QA)
    - Test will be conducted on the following devices and browsers:
      - Microsoft Windows Desktop
        - Microsoft Internet Explorer – 11
        - Microsoft Edge – (Latest Version)
        - Mozilla Firefox – Current Version (51)
        - Google Chrome – Current Version (56)
      - Mac OS X Desktop
        - Safari – 10.x
        - Mozilla Firefox – Current Version (51)
        - Google Chrome – Current Version (57)
      - Tablets
        - OS Safari on iOS 9.x
        - Chrome (Latest Version) on Android 6.x
      - Mobile
        - iOS Safari on iOS 9.x
        - Chrome Browser on iOS 9.x
        - Chrome Browser (Latest Version) on Android 6.x Marshmellow
  - Staging
    - UAT performed by ExpandLab
    - UAT acceptance testing by Client
  - Soft Launch
  - Hard Launch (Production)
  - Post Deployment (Bug Fixes & Support)
- Customer Sign-Off

DocuSign Envelope ID: A8AA3237-60D2-40A8-9863-A311D677A59A



## PROJECT MANAGEMENT

ExpandLab's project methodology includes planning and specifications monitoring to ensure the capabilities of the application support the client's business goals and vision. Planning includes education of the project team, timeline definition, development of the project plan and establishing roles and responsibilities for team members.

Project Management Services are delivered throughout the project lifecycle and include continuous application of best practices during meetings, phone calls, and scheduled status updates. Additional activities performed under this umbrella include solutions research and the necessary conversations between internal and external project teams to achieve defined goals. A Project Manager is assigned to every project as the primary point of contact to ensure the project remains on schedule, within budget, and that all appropriate Client expectations are met.

The end users and management will also be trained on any modifications to the Catalog made to accommodate to the new responsive theme. ExpandLab anticipates providing general training to up to five (5) admin users.

**Key Deliverables and Activities:**
- Checkpoint and Status Calls
- Ongoing Modifications to Project Plan
- Ongoing Project Team Communication
- Ongoing Project Team Sprint Planning
- Client and Internal Project Reports Preparation
- Weekly Reports on Budget & Hours

## ASSUMPTIONS

- Client will provide a dedicated Project Manager as part of the Client's Project Team that will work in conjunction with the ExpandLab Project Manager.
- Client will provide an Executive Sponsor as a point of contact for support, necessary decisions and escalations.

DocuSign Envelope ID: A8AA3237-60D2-40A8-9863-A311D677A59A


ExpandLab

## PROJECT GENERAL ASSUMPTIONS

- Magento Open Source v2.x will be the platform for development
- This estimate assumes only a high level of detail in regards to integration with the specified systems. If further integration features are required, such as differing synchronization logic or development, this will require a review of the estimate and a possible Project Change Request.
- Client and/or 3rd party vendor(s) will provide documentation for integration and is responsible for any modifications to such integrations.
- Client will execute contract and enable ExpandLab to begin scheduling this project by **December 12, 2017.**

## PROJECT HOURS AND COST SUMMARY

The following table summarizes the projected hours and estimated total cost contained in this SOW.

| PROJECT PHASES | Estimated Hours | Rate | Estimated Total Cost |
|---|---|---|---|
| Discovery | 24 | $150 | $3,600 |
| Design | 20 | $150 | $3,000 |
| Development | 330 | $150 | $49,500 |
| Deploy | 82 | $150 | $12,300 |
| TOTAL ▶ | 456 | $150 | $68,400 |

DocuSign Envelope ID: A8AA3237-60D2-40A8-9883-A311D677A59A

 ExpandLab

TERMS AND FEE SCHEDULE

## PROJECT FEES

The preliminary estimated project fee for the engagement as stated above is based on best available current information. This represents ExpandLab's best estimation of the effort required based upon discussions to date and only considers those Services in this SOW. This estimation gives Client an indication of the effort required; however, Client will be invoiced for the actual number of hours of effort required, which may be more or less than estimated.

Based on the assumptions contained in this Statement of Work, ExpandLab shall provide the Services described in the SOW and invoice Client as follows:

-   A (evergreen) retainer deposit of **$3,600** will be invoiced upon execution of this SOW and payable on or before the kick-off meeting ("**Retainer**").

-   Monthly Invoices equal to the amount of hours the previous month times the hourly rate will be sent by the 5th of the current month and are due Net 30 days from the date of the invoice. **The final invoice will be modified to equal the outstanding budget minus the initial retainer deposit.** Invoices are due Net 60 days from the date of the invoice.

If the project becomes inactive, unused hours will expire twelve (12) months from the SOW Effective Date unless otherwise specified in writing.

## OUT OF SCOPE & ADDITIONAL SERVICES

Any Changes in Scope or cost shall be documented in writing among the Parties. Changes in Scope may affect the completeness of deliverables and/or extend the effort and may result in additional costs to Client. In addition, dependencies, which are not met and are not the responsibility of ExpandLab, may result in additional costs. Out-of-scope services requested by Client shall be set forth in a separate SOW or Project Change Request and shall not be effective until executed by both Parties hereto. Out-of-scope services shall be billed according to the rate schedule above.

## PROJECT RELATED EXPENSES

Client shall reimburse the actual and reasonable out-of-pocket expenses of ExpandLab associated with travel related to the Services hereunder and such other actual and reasonable out-of-pocket expenses, provided such expenses were approved in advance by Client. Out of town travel, airfare, hotel, ground transportation and meal expenses will be billed at cost in accordance with Client's Travel and Expense Policy. Mileage and tolls shall be invoiced at IRS-approved rates.  All other project expenses shall be billed at cost to Client in accordance with Client's policies.

## TERM & TERMINATION

This SOW shall commence on the SOW Effective Date and shall continue until such time as ExpandLab has completed the Services in accordance with this SOW. This SOW, and ExpandLab's Services and project fees hereunder, may be terminated by Client for any reason or no reason at all upon thirty (30) calendar days' prior written notice to ExpandLab. Upon such termination, amounts payable by Client to ExpandLab for Services provided prior to the termination date will be due to ExpandLab immediately. Client shall be refunded for any deposit payment, pre-paid payment, or retainer payments to the extent such payments exceed any amount owed by Client to ExpandLab upon the termination date.

DocuSign Envelope ID: A8AA3237-60D2-40A8-9863-A311D677A69A



## PURCHASE ORDER

To be determined by client. A purchase order may be created if required.

## CLIENT CONTACT INFORMATION

All invoices for project fees and reimbursable travel expenses shall be sent via email to:

## PRIMARY PROJECT CONTACT REPRESENTATIVE

| | |
|---|---|
| Name | Patrick Mullins |
| Address | 402 5th Street |
| City, State/Province | Grottoes, Virginia |
| Country | USA |
| Zip/Mail Code | 22827 |
| Telephone | 5408302183 |
| Email Address | mullinspw@gmail.com |

## ACCOUNTS PAYABLE CONTACT

| | |
|---|---|
| Name | Patrick Mullins |
| Address | 402 5th Street |
| City, State/Province | Grottoes, Virginia |
| Country | USA |
| Zip/Mail Code | 22827 |
| Telephone | 5408302183 |
| Email Address | mullinspw@gmail.com |

DocuSign Envelope ID: A8AA3237-60D2-40A8-9863-A311D877A59A



## SIGNATURE

*By the signatures below, the Parties, by their authorized representatives, agree to the terms and conditions as stated herein and the MSA as of the SOW Effective Date.*

**ACCEPTED BY:**

| Mullins Enterprises | ExpandLab, LLC |
|---|---|
| *Patrick Mullins* | *Dennis Ngin* |
| **Signature** | **Signature** |
| Patrick Mullins | Dennis Ngin |
| **Printed Name** | **Printed Name** |
| Owner | COO |
| **Title** | **Title** |
| 12/22/2017 | 12/10/2017 |
| **Date Signed** | **Date Signed** |

**Please return ALL PAGES of this Statement of Work via one of the following:**

By e-mail to:  dennis@expandlab.com
By mail to:   ExpandLab, LLC
         PO Box 20116
         Atlanta, GA 30325
         Attn: Contracts Administrator